Lippincott *v.* Bechtold.

WALLACE LIPPINCOTT and NATHAN S. READ, appellants,

*v.*

HENRY BECHTOLD et al., respondents.

1. A decree of the orphans court allowing an executor's account, made after due publication, will, even though irregular, cast upon those who seek to impugn the account collaterally, the burden of proving its incorrectness.

2. Residuary legatees are not wronged by a transfer to the testator's widow of personal property which does not appear to be in excess of her rights under the will.

3. A large number of lots were conveyed to three executors in satisfaction of a debt due to the testator. On some of the lots one of the executors had a mortgage which he afterwards foreclosed, buying in the lots at a fair price.— *Held,* that he did not hold the title as trustee for the testator's estate.

4. An exception to an item in an account stated by a master in chancery was sustained, and the account was sent back to the master for modification. He again reported the item as at first stated, but reported the facts on which the modification could be made.—*Held,* that the item might be corrected without further formal exception.

On appeal from a decree, in *Bechtold* v. *Read et al.,* advised by Vice-Chancellor Bird.

*Mr. Edwin Robert Walker, Mr. Garret D. W. Vroom* and *Mr. Mayne* (of Philadelphia), for the respondents.

*Mr. Charles E. Hendrickson,* for Lippincott.

*Mr. Walter A. Barrows,* for Read.

The opinion of the court was delivered by

DIXON, J.

These appeals, one by Wallace Lippincott and the other by Nathan S. Read, bring up a decree in chancery, made on exceptions to a master's report which stated the account of each appellant as an executor and trustee under the will of Samuel

Bechtold, Jr., who died in Burlington county, November 18th, 1869. It will suffice for us to indicate our views on those matters wherein we differ from the learned vice-chancellor who advised the decree.

First, in Lippincott's appeal.

With regard to the bond and mortgage given to the testator by Nathan S. Read, for $7,400, the facts seem to be that, early in 1870, the executors endeavored to sell the bond and mortgage, and at length made an agreement with John R. Weeks, representing the Mutual Benefit Life Insurance Company, to sell them to that company for $5,000; that the executors thereafter signed, sealed and acknowledged a proper assignment, and handed it to Nathan S. Read for delivery to the company on payment of the price; that Read met Weeks and delivered him the assignment, receiving therefor Weeks' personal check for $5,000, payable to Read's order, and also, at Weeks' request, endorsing and returning to Weeks a similar check for $2,400; that subsequently Read endorsed the $5,000 check and delivered it to Lippincott. It also appears that the company had previously given to Weeks its check for $7,400, to be used in payment for the bond and mortgage, but it is not asserted that Lippincott had any notice of this fact or of the $2,400 check, or any reason to suppose that the company had been willing to pay more than $5,000 for the security. In 1885, Lippincott, on citation, filed an account as executor in the orphans court of Burlington county, in which he prayed credit for the difference between the inventoried valuation of the bond and mortgage and $5,000, and that account after due publication was allowed by the court. Although, under section 104 of the Orphans Court act, the allowance was irregular, because the account showed a balance due the accountant and had not been reported to the court at a previous term, yet the decree of allowance is not void, but operates to cast upon those who would impugn the account collaterally the burden of proving its incorrectness. The evidence in this case does not satisfy us that Lippincott failed to exercise due care, prudence and fidelity in this transaction, and therefore the decree charging him with more than the $5,000 which he received should be reversed.

Lippincott *v.* Bechtold.

The following items—

> " 1870.
> "May   7.  Judgment, Newell Fay *v.* Van Arsdale...· $1,265 00
> "May  10.  Judgment, Newell Fay *v.* Van Arsdale...  1,591 75
> "Aug. 10.  Judgment, C. A. Pulte........................    831 31
> "1871.
> "Sept. 12.  S. T. Leeds, sheriff...........................     50 00"

all appear in the account allowed by the orphans court, in December, 1885.   The credits in that account were not attacked by the bill of complaint, and they were admitted by the complainants' counsel in the taking of testimony.   The evidence shows that the largest of these items was intended to include a judgment obtained by one Schneider against the testator and paid by Lippincott, but with this correction the amounts do not seem to be wrong.   The decree reducing them should be reversed.

Second, in Read's appeal.

The testator, in his lifetime, had owned a large number of vacant lots, and had conveyed them to various persons, taking in return bonds and mortgages for the entire consideration. After his death, these persons reconveyed the lots to the executors, in satisfaction of the bonds and mortgages.   Afterwards, some of these lots were transferred by the executors through one Hartley to the testator's widow.   The testator's will gave to his widow his homestead during her life, "besides her right of dower in all of 'my personal and real estate."   The lots above mentioned represented the testator's personal estate, and do not appear to have exceeded the value of the widow's "dower" therein.   We think, therefore, that the complainants, who are only residuary legatees and devisees, were not wronged by the transfer.   The decree charging any of the executors with these Hartley lots should be reversed.

Of the lots conveyed to the executors as above mentioned in satisfaction of mortgages, one hundred and nine, conveyed by one Burke, were subject to a mortgage which the testator had assigned to Nathan S. Read.   Afterwards, Read foreclosed this mortgage, and bought in the lots.   It does not appear that they were worth more than the face of the mortgage.   That the

mortgage had been duly assigned by the testator to Read is admitted by a written stipulation filed in the cause, and we therefore see no reason to question his title to the lots. The decree charging him as trustee for the complainants is reversed.

The testator's will contains the following clause:

"I give and devise unto the children of my brother William, sister Mary, sister Sarah, sister Margaret, brother John and brother Henry, and Nathan S. Read and his wife, Mary, each of them share and share alike, the residue of my property, both real and personal."

The vice-chancellor interpreted this clause as giving shares, not to Mr. and Mrs. Read, but to their children in common with the children of the brothers and sisters named. This, we think, is erroneous. The conjunction "and" between "brother John" and "brother Henry" indicates the closing of the class of persons whose children are to take, and then other persons, Nathan S. Read and Mary, his wife, are designated to take in common with the children before mentioned. This interpretation is much strengthened by the facts that Mrs. Read was an adopted daughter of the testator, who was otherwise childless, and, although she and Mr. Read had been married ten years at the date of the will, they had had no children up to the time of the testator's death.

It being conceded that the children of the brothers and sisters named numbered fifteen, the residue of the estate should be divided into seventeenths, of which Mr. and Mrs. Read are each entitled to one.

The other matters discussed by counsel have been carefully examined by the court, but we have not found sufficient reason for disturbing the conclusions of the vice-chancellor.

It may be worth while to say that, although the decree corrects the master's final report in respect to the Gaskill lots, without any exception having been taken thereto, yet the master's first report on that subject was excepted to by the complainants, and the exception was sustained, and the master directed to modify his report. For what he deemed good reason, he did not do so in stating the account, but he reported the facts according to

which the modification could be made.   Under these circumstances, we think, it was proper to correct the report without further exception, so as to make the final decree consistent with the prior order.

Let the decree of the court of chancery be modified in accordance with the views above expressed.

*For reversal*—The Chief-Justice, Depue, Dixon, Garrison, Gummere, Ludlow, Magie, Van Syckel, Barkalow, Bogert, Nixon—11.

*For affirmance*—None.